1
2
3
4                    UNITED STATES DISTRICT COURT
5                   NORTHERN DISTRICT OF CALIFORNIA
6
7    PATRICK J TOBIN,                    Case No.  13-cv-01504-MEJ
              Plaintiff,
8                                        **ORDER GRANTING MOTION FOR**
         v.                              **SUMMARY JUDGMENT**
9
                                         Re: Dkt. No. 94
10   CITY & COUNTY OF SAN FRANCISCO,
              Defendant.
11
12
13                          **INTRODUCTION**
14          Patrick Tobin ("Plaintiff"), a former officer in San Francisco Police Department's
15   ("SFPD") Traffic Company, brings this action against the City and County of San Francisco
16   ("Defendant") for alleged violations of Federal and California anti-retaliation laws.  Pending
17   before the Court is Defendant's Motion for Summary Judgment.  Mot., Dkt. No. 94.  Plaintiff filed
18   an Opposition (Opp'n, Dkt. No. 101), and Defendant filed a Reply (Reply, Dkt. No. 102).  The
19   Court requested further briefing from the parties (Suppl. Briefing Order, Dkt. No. 105), which the
20   parties filed (Def.'s Suppl. Br., Dkt. No. 106; Pl.'s Suppl. Stmt., Dkt. No. 107; Pl.'s Suppl. Br.,
21   Dkt. No. 109).  Each party also filed a Statement of Recent Relevant Judicial Opinion.  Pl.'s Jud.
22   Op., Dkt. No. 111; Def.'s Jud. Op., Dkt. No. 112.  Finding the matter suitable for disposition
23   without oral argument, the Court vacated the related hearing.  Dkt. No. 110.  Having considered
24   the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS**
25   Defendant's Motion for the reasons stated below.
26                          **LEGAL STANDARD**
27          Summary judgment is proper where the pleadings, discovery and affidavits demonstrate
28   that there is "no genuine dispute as to any material fact and [that] the movant is entitled to

United States District Court
Northern District of California

1   judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party moving for summary judgment

2   bears the initial burden of identifying those portions of the pleadings, discovery and affidavits that

3   demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

4   317, 323 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson v.*

5   *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is

6   sufficient evidence for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

7          Where the moving party will have the burden of proof on an issue at trial, it must

8   affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

9   party.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  On an issue where

10  the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by

11  pointing out to the district court that there is an absence of evidence to support the nonmoving

12  party's case.  *Celotex*, 477 U.S. at 324-25.

13         If the moving party meets its initial burden, the opposing party must then set forth specific

14  facts showing that there is some genuine issue for trial in order to defeat the motion.  Fed. R. Civ.

15  P. 56(c)(1); *Anderson*, 477 U.S. at 250.  All reasonable inferences must be drawn in the light most

16  favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir.

17  2004).  However, it is not the task of the Court to scour the record in search of a genuine issue of

18  triable fact.  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  The Court "rel[ies] on the

19  nonmoving party to identify with reasonable particularity the evidence that precludes summary

20  judgment."  *Id.*; *see also Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

21  Thus, "[t]he district court need not examine the entire file for evidence establishing a genuine

22  issue of fact, where the evidence is not set forth in the opposing papers with adequate references

23  so that it could conveniently be found."  *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031

24  (9th Cir. 2001).  If the nonmoving party fails to make this showing, "the moving party is entitled

25  to a judgment as a matter of law."  *Celotex*, 477 U.S. at 322 (internal quotations omitted).

26         Additionally, at the summary judgment stage, parties must set out facts they will be able to

27  prove at trial.  At this stage, courts "do not focus on the admissibility of the evidence's form . . . .

28  [but] instead focus on the admissibility of its contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036

United States District Court
Northern District of California

2

1    (9th Cir. 2003) (citation omitted). "While the evidence presented at the summary judgment stage

2    does not yet need to be in a form that would be admissible at trial, the proponent must set out facts

3    that it will be able to prove through admissible evidence." *Norse v. City of Santa Cruz*, 629 F.3d

4    966, 973 (9th Cir. 2010) (citations omitted). Accordingly, "[t]o survive summary judgment, a

5    party does not necessarily have to produce evidence in a form that would be admissible at trial, as

6    long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City

7    of L.A.*, 253 F.3d 410, 418-19 (9th Cir. 2001); *Celotex*, 477 U.S. at 324 (a party need not "produce

8    evidence in a form that would be admissible at trial in order to avoid summary judgment."); *see

9    also* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must

10   be made on personal knowledge, set out facts that would be admissible in evidence, and show that

11   the affiant or declarant is competent to testify on the matters stated.").

12                              **PRELIMINARY EVIDENTIARY ISSUES**

13          As an initial matter, there are numerous evidentiary issues in the parties' briefing and

14   supporting documentation that the Court must address.

15   **A.    Plaintiff's Objections**

16          Plaintiff filed two sets of evidentiary objections to Defendant's Motion and supporting

17   Rebuttal Declaration but did so outside of his Opposition brief. *See* First Objs., Dkt. No. 99;

18   Second Objs., Dkt. No. 103. These separate filings violate Civil Local Rule 7-3(a), which requires

19   "[a]ny evidentiary and procedural objections to the motion be contained within the brief or

20   memorandum." Any objections not contained in Plaintiff's Opposition or in his Controverted

21   Statements of Facts (*see* Pl.'s Stmt. of Controverted Facts, Dkt. No. 101-1; Pl.'s Suppl. Stmt.), are

22   overruled for failure to comply with the Local Rule. *See Hennigan v. Insphere Ins. Sols., Inc.*, 38

23   F. Supp. 3d 1083, 1094-95 (N.D. Cal. 2014) (striking separately filed evidentiary objections for

24   failure to comply with Local Rule 7-3(a) and (c)); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772

25   F. Supp. 2d 1111, 1119 (N.D. Cal. 2011) (denying parties' separately-filed motions to strike

26   evidence on ground that they violate Local Rule 7-3(b) and (c), and characterizing motions as

27   "attempt[s] to evade the briefing page limits").

28          Many of Plaintiff's objections are also frivolous. For example, Plaintiff objects to the

United States District Court
Northern District of California

3

deposition transcripts attached to defense counsel's Declarations, arguing the transcripts are "not appropriately authenticated by an affidavit or declaration" and are inadmissible hearsay.  First Objs. at Nos. 7, 9-12, 15-17, 20-24, 26, 28; Second Objs. at Nos. 1-3.  But "[a] deposition or an extract therefrom is authenticated in a motion for summary judgment when it identifies the names of the deponent and the action and includes the reporter's certification that the deposition is a true record of the testimony of the deponent."  *Orr v. Bank of Am., N.T. & S.A.*, 285 F.3d 764, 774 (9th Cir. 2002).  The transcripts attached to defense counsel's Declaration and Rebuttal Declaration include the names of each deponent, the action, and the Reporter's Certificate declaring the transcript is a true and correct record of the deposition.  *See* Gschwind Decl., Dkt. No. 95, Exs. E, F-O; Gschwind Rebuttal Decl., Dkt. No. 102-2, Exs. A-B.[1]  Counsel, as an officer of the court and under penalty of perjury, declares the deposition excerpts are "true and correct cop[ies] of selected portions of the certified transcript" of each deponent.  Gschwind Decl. ¶¶ 6-17.  Because these transcripts are properly authenticated, the Court overrules Plaintiff's authenticity objections. Plaintiff's objections that counsel's Rebuttal Declaration fails to demonstrate personal knowledge for attaching the deposition transcripts and that the transcripts are inadmissible hearsay are stricken for the same reason.  Finally, Plaintiff objects that certain exhibits should be excluded as prejudicial or confusing, but does not explain how the probative value of the evidence Defendant relies upon is "substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence" (Fed. R. Evid. 403).  The Court has reviewed the evidence and finds no basis for exclusions. Accordingly, the Court overrules Plaintiff's Rule 403 objections.

**B.      Defendant's Objections**

Defendant has numerous objections to the declarations filed in support of Plaintiff's Opposition, the first of which is its objection to Plaintiff's declaration "on the ground that it is unsigned."  Reply at 9; *see* Tobin Decl. (unsigned), Dkt. No. 101-4.  Plaintiff did not respond to Defendant's objection.

---

[1] The Exhibits attached to Defendant's counsel's Declarations do not precisely correlate to docket numbers; accordingly, to avoid confusion, the Court only refers to the Exhibit letters, without the particular docket numbers associated with those entries.

United States District Court
Northern District of California

United States District Court
Northern District of California

A declaration used to oppose summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In addition, 28 U.S.C. § 1746 requires that a declaration be signed and dated. *Id.* An unsigned declaration "is an inadmissible document because there is no proof that the declarant saw the document or approved of its contents." *Fresno Rock Taco, LLC v. Nat'l Sur. Corp.*, 2012 WL 3260418, at *7 (E.D. Cal. Aug. 8, 2012) ("Because these unsigned declarations fail to meet the requirements of 28 U.S.C. § 1746, they are defective and cannot be considered with this motion."). Plaintiff's unsigned declaration is not competent summary judgment evidence. In addition to being unsigned, instead of containing information in Plaintiff's personal knowledge, the Declaration largely consists of instructions by Plaintiff's counsel to his client, apparently intended to elicit testimony regarding specific topics; in many instances, however, Plaintiff did not provide responses. *See* Tobin Decl. ¶ 12 (no response by Plaintiff), ¶ 13 (Plaintiff's response is "???????????????????????????????"); *see also* ¶¶ 14-35 (paragraphs consist in part or entirely of counsel's instructions to Plaintiff). Given the fact the Declaration is not signed and large portions of it consist of instructions prepared by Plaintiff's counsel—not facts within Plaintiff's personal knowledge—the Court may not consider Plaintiff's Declaration with this motion.

Defendant also objects to the declarations of John Fewer ("Fewer Decl."), Morgan Gorrono ("Gorrono Decl."), and Gregory Corrales ("Corrales Decl."). *See* Fewer Decl., Dkt. No. 101-2; Gorrono Decl., Dkt. No. 101-3; Corrales Decl., Dkt. No. 101-5.[2] The Court has reviewed Defendant's objections, and to the extent they relate to evidence on which the Court relies in its ruling, the Court will address those objections as necessary in its Order below; the objections are otherwise moot.

## C.    Belated Request to File New Evidence

Plaintiff's counsel seeks leave to file the Declaration of Kitt Crenshaw, which he failed to file contemporaneously with Plaintiff's Opposition. *See* Pl.'s Suppl. Stmt. at 2 n.1 & Ex. A

---

[2] In accordance with Civil Local Rule 7-3(b), Defendant included its evidentiary objections in its Reply Brief. *See* Reply at 10-12.

1    ("Crenshaw Decl."). Plaintiff cites Crenshaw's Declaration in his Opposition (Opp'n at 14-15)

2    and also cites portions of the Declaration in his statements of controverted facts. The Court grants

3    Plaintiff leave to file the Crenshaw Declaration but only will consider its contents to the extent

4    they are specifically referenced in the Opposition or statements of controverted facts.

5                                              **BACKGROUND**

6    **A.      Plaintiff's Initial Response to Defendant's Motion**

7            Plaintiff's Second Amended Complaint alleges that from 2001-2009 he was Director of the

8    Safe Paths of Travel ("SPOT"), a program that regulated construction work on San Francisco

9    streets. *See generally* Second Am. Compl. ("SAC"), Dkt. No. 59. During that time, Plaintiff and

10   the officers working under him cited contractors and imposed heavy fines for violations. Plaintiff

11   alleges, however, that due to pressure from contractors and the local builders' association, his

12   supervisors instructed him to cease enforcing the SPOT program. He alleges his supervisors

13   retaliated against him by cutting his overtime hours, removing him as Director of the SPOT

14   program, issuing a "Stay Away Order" requiring him to stop taking any steps to report or enforce

15   SPOT violations, and denying him a higher pay rate. Plaintiff left the force when he retired in

16   June 2013. Plaintiff alleges that through the retaliatory conduct of its employees in the Police

17   Department, Defendant violated Federal and California anti-retaliation statutes.

18           In its Summary Judgment Motion, Defendant contends there is no evidence supporting

19   Plaintiff's claims, and Defendant supports its arguments with specific citations to evidence in the

20   record. Instead of identifying specific facts and supporting evidence in opposition to the Motion,

21   Plaintiff's Opposition vaguely refers to an "abundance of evidence on the record" (Opp'n at 12),

22   noting the "evidence before the court instantly is replete with instances of retaliatory conduct" (*id.*

23   at 13) and the "record here abounds in favor of a finding" for Plaintiff (*id.* at 22). Plaintiff

24   references various declarations but without citing any specific portions within them. He also did

25   not to include in his Controverting Statement of Facts "any additional facts that establish a

26   genuine issue of material fact or otherwise preclude judgment in favor of the moving party." Dkt.

27   No. 12 (Notice Re: Summary Judgment Statement of Facts); *see* Pl.'s Stmt. of Controverted Facts.

28   The Court was thus initially unable to assess whether Plaintiff had "identif[ied] with reasonable

United States District Court
Northern District of California

particularity" any "evidence that precludes summary judgment." *Keenan*, 91 F.3d at 1279.

Pursuant to Federal Rule of Civil Procedure 56(e)(1), the Court allowed Plaintiff the opportunity to identify specific portions of the record on material topics. *See* Suppl. Briefing Order. Plaintiff filed a "Supplemental Statement Identifying Portions of Record on Summary Judgment Disclosing Genuine Issues of Disputed Facts" and a Supplemental Brief. As the Court did not grant Defendant leave to object to Plaintiff's Supplemental Statement, it will evaluate the evidence independently to ascertain whether it complies with Rule 56.

**B.      Undisputed Material Facts**

Using the evidence specifically cited by the parties[3], the Court finds the following material facts undisputed, except where noted:

In 2001, Plaintiff became the Director of SFPD's SPOT program, which regulated construction work on San Francisco streets. Def.'s Reply Stmt. of Material Undisputed Facts ("Def. Fact") No. 5, Dkt. No. 102-1. He worked approximately 40 hours of overtime per pay period to perform these duties. Gschwind Decl., Ex. F (Cashman Dep.) at 133:23-134:19; *id*., Ex. G (Greely Dep.) at 243:12-244:12. As Director, Plaintiff oversaw the SPOT program but no longer visited job sites or personally enforced right-of-way laws. Greely Decl., Ex. A, Dkt. No. 94-3.

In mid-2008, Deputy Chief Kevin Cashman made Lieutenant Nicole Greely the officer in charge of the SPOT program with the goal of decentralizing the enforcement of the program to individual stations; shifting it to "everyday enforcement versus overtime enforcement;" and keeping Plaintiff in the program "in a different role essentially as a trainer, as a manager to coordinate scheduling SPOT operations, things like that." Cashman Dep. at 58:4-20, 59:9-60:11,

---

[3] "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1). The Court will not scour the record to unearth a genuine issue of fact where the non-moving party has not set forth evidence with adequate references so that it can be found conveniently. *See supra* at 2. Where the Court recites a fact as undisputed, it has (1) determined the party referenced specific portions of the record in support of the fact; (2) evaluated whether the evidence meets the requirements of Rule 56; and (3) determined the party disputing the fact has failed to establish a genuine issue of material fact exists. To the extent a party disputed a fact the Court recites as undisputed, the Court will resolve any pertinent evidentiary disputes in a footnote.

United States District Court
Northern District of California

1    73:5-75:13.  Plaintiff's overtime hours were cut in half in order to spread the overtime to other

2    people.  *Id.* at 99:23-100:11, 107:23-108:2, 133:23-134:24; Corrales Decl. at 2:19.

3          On February 27, 2009, Greely emailed Cashman recommending Plaintiff be removed from

4    his position as Director of the SPOT program.  Def. Fact No. 10; Greely Decl., Ex. A.  Plaintiff

5    was removed as Director of the SPOT program effective March 10, 2009.  Def. Fact No. 11;

6    Gschwind Decl., Ex. E (Def.'s Tobin Dep.) at 44:17-22.

7          Plaintiff continued to report SPOT violations for the next few months.  Def. Fact No. 12.

8    Contractors complained to the SFPD that Plaintiff continued to do SPOT enforcement.  *Id.*  On

9    May 11, 2009, SFPD Chief Heather Fong issued a "stay away order" forbidding Plaintiff from

10   taking any further SPOT enforcement action or appearance thereof.  Def. Fact No. 13.[4]

11         After May 2009, Plaintiff continued to speak about and attend events regarding traffic

12   safety.  Pl.'s Suppl. Stmt. at 2 (citing Fewer Decl. at 3:17-20; Corrales Decl. at 4:8-15; Gorrono

13   Decl. ¶ 15; Gschwind Rebuttal Decl., Ex. C (First Fewer Dep.) at 83:4-20).  Among other things,

14   Plaintiff gave a presentation about the SPOT program to San Francisco City Officials in

15   September 2009, during which he explained the program was the means the SFPD used to ensure

16   public safety.  Gorrono Decl. ¶ 15.  Plaintiff also attended a conference of District Attorneys in

17   Anaheim, California, and other conferences throughout the country, where he discussed traffic

18   safety.  Fewer Decl. at 3:17-20; Corrales Decl. at 4:8-15.

19         In addition to speaking about traffic safety, Plaintiff also continued to perform his regular

20   duties as an SFPD officer.  The Memorandum of Understanding ("MOU") (*see* Gschwind Decl.,

21   Ex. S) between Defendant and the San Francisco Police Association provided that when an officer

22   was required to perform duties of a superior officer who was on leave, the lower-ranked officer

23

24   _____

     [4] Plaintiff argues that "[n]o evidence exists that Chief Fong's ultra vires 'Stay Away Order'" as it
25   "was not in his personnel file[.]"  *See* Def. Fact No. 13 (Pl.'s Response).  Arguing there is no
     evidence the document was not placed in the file does not create a triable issue of fact about the
26   issuance of the order or its contents.  Moreover, the passage of the Corrales Declaration Plaintiff
     cites to dispute the fact (Corrales Decl. at 4:1-7) does not dispute the content of the stay away
27   order.  On the contrary, Corrales declares he was "outraged" by the issuance of the stay away
     order, which he described as a "restraining order to stop [Plaintiff] from enforcing the public right
28   of ways around construction work zones."  *Id.*

United States District Court
Northern District of California

was entitled to "Like Work Like Pay" ("LWLP").  Def. Fact No. 14 (quoting MOU § 6).[5]  For

example, in 2009, Sergeant John Fewer acted as lieutenant when Lieutenant Kitt Crenshaw was

out; that year, Fewer earned LWLP on 128 days for doing so.  Gschwind Decl., Ex. L (Second

Fewer Dep.) at 41:3-42:2; *see also* Fewer Decl. 3:25-4:2.

Beginning in August 2009, the SFPD Police Chief implemented a departmental

reorganization.  Def. Fact No. 15.  Several lieutenants were reassigned to new positions created as

part of the reorganization, and their old positions were left vacant.  *Id.*  In November 2009,

Crenshaw was promoted to Commander and transferred out of the Traffic Company.  Fewer Decl.

at 3:26-27; Crenshaw Decl. at 4:8-10.  SFPD Command Staff decided not to fill Crenshaw's

vacated position.  Def. Fact No. 16.

In December 2009, Captain Greg Corrales informed Fewer he could no longer receive

LWLP for performing Crenshaw's duties after Crenshaw was promoted.  Def. Fact No. 17.  Fewer

went into the Deferred Retirement Option Program ("DROP"), and Plaintiff became the next

highest-ranking officer.  Fewer Decl. at 4:3-4.  In January 2010, Plaintiff requested LWLP for

performing Crenshaw's former duties, but his Captain denied the request.  Def. Fact No. 18.

Plaintiff argues that the denial of LWLP was a retaliatory act.  *See* Opp'n at 13-16.  Plaintiff

provides the declarations of several officers who state that LWLP was only stopped when Plaintiff

became eligible for it and convey their beliefs that the denial of LWLP was retaliatory.  *See* Fewer

Decl. at 4:4-15; Corrales Decl. at 4:26-5:12; Crenshaw Decl. at 4:11-16.[6]  However, Plaintiff was

not the only one who was denied LWLP.  *See* Second Fewer Dep. at 53:19-54:6; Gschwind Decl.,

Ex. O (Taylor Dep.) at 12:16-13:13, 44:5-45:14 (no sergeant in Plaintiff's unit received LWLP for

---

[5] Plaintiff attempts to dispute this fact by referring to another MOU between the SFMTA and the SFPD, which Plaintiff describes as requiring SFPD assign four lieutenants.  *See* Def. Fact No. 14 (Pl.'s Response).  Accepting Plaintiff's description of the second MOU as true (which the Court cannot confirm because Plaintiff did not provide the document), it does not contradict the requirements for LWLP that Defendant articulates, and Plaintiff fails to lay adequate foundation for the application of the MOU to these circumstances at this time.

[6] Plaintiff argues the decision to leave the position vacant reveals "retaliatory animus" because it had been the SFPD's past practice to offer LWLP when an officer performed Crenshaw's duties.  *See* Def. Fact No. 16 (Pl.'s Response).  The Court sustains Defendant's objections that Corrales and Fewer do not lay sufficient foundation to show Crenshaw's position was eliminated for retaliatory reasons, and that their declarations on this point are argumentative.  *See* Reply at 12-13.  The same objections apply to Crenshaw's Declaration on this point.

United States District Court
Northern District of California

performing Crenshaw's former duties: "the senior men in our office would fill out a [LWLP] card and [the lieutenants in the Traffic Company] would tear it up."), 48:18-23, 67:5-24.  There is no evidence in the record that any officer received LWLP after December 2009.

On April 23, 2010, Plaintiff submitted a formal grievance to his Captain regarding the denial of LWLP, which was denied at both Step I and Step II.  Def. Fact No. 19; Gschwind Decl. Ex. AA (denying Step II grievance on May 19, 2010).  Plaintiff's Union declined to advance the grievance to Step III.  Def. Fact No. 19.

There is no evidence in the record that Defendant took any action against Plaintiff that Plaintiff alleges was retaliatory after May 2010.  *See* Opp'n at 14-23 (identifying retaliatory actions through denial of LWLP in January 2010, but nothing thereafter); Def. Fact Nos. 21-28, 30; *see generally* Pl.'s Suppl. Stmt.[7]

On June 28, 2011, Plaintiff filed a complaint in state court, alleging violations of the Peace Officers' Bill of Rights and 42 U.S.C. § 1983.  Def. Fact No. 1.  The complaint did not allege Plaintiff had complied with California's Government Tort Claim Act ("CTCA").  Gschwind Decl., Ex. A (initial compl.).

Meanwhile, Plaintiff entered DROP on June 30, 2011.  *See* Robinson Decl., Ex. 1 (Pl.'s Tobin Dep.) at 42:13-18, Dkt. No. 98.

On July 27, 2011, Plaintiff filed a retaliation complaint with the Labor Commissioner for the State of California.  *See id*, Ex. 3 (Labor Commissioner complaint).  Plaintiff identified the

_____

[7] Although Plaintiff's SAC alleges retaliatory conduct through June 2013 (SAC ¶¶ 21-64), his Opposition does not identify any retaliatory conduct after January 2010.  *See* Opp'n at 12-18 (identifying reduction of overtime pay in March 2008, Chief Fong's May 2009 Stay Away Order, and denial of LWLP in January 2010).  The Court specifically allowed Plaintiff to supplement his Opposition by identifying portions of the record he contended created a triable issue of fact regarding "[w]hen and how Defendant took retaliatory action against Plaintiff after May 2010, and why that action was retaliatory."  Suppl. Briefing Order at 2.  The only portion of the record Plaintiff identified to show retaliatory conduct after May 2010 is a statement by his former co-worker Morgan Gorrono.  Pl.'s Suppl. Stmt. at 3.  Gorrono only states that in 2011, he shared with Plaintiff his "conclusion that SFPD Command Staff seemed to be engaging in an ongoing campaign of harassment against him . . . and that they seemed bent on depriving him of his rights as an employee."  *Id.* (citing Gorrono Decl. ¶ 23).  Gorrono's "conclusion" is inadmissible because it lacks foundation and the qualified statements that Defendant "seemed" to be "harassing" Plaintiff are too vague and generalized to create a genuine issue of fact that Defendant took any retaliatory action against Plaintiff after May 2010.  The Court addresses the only other potential evidence concerning acts after May 2010 in the footnote below.

date of protected activity as July 18-19, 2011.  *Id.*  In the Labor complaint, Plaintiff alleges he attended a Civil Service Commission meeting on July 18, 2011 to address the denial of Plaintiff's LWLP, and that after the meeting, his employer, Defendant, started a "time-card abuse investigation" concerning him and three of his witnesses.  *Id.*[8]

On December 23, 2011, Plaintiff filed a claim against Defendant under the CTCA, Cal. Gov't Code §§ 810, et seq.  Def. Fact No. 2; Robinson Decl. ¶ 2; *see also* Gschwind Decl., Ex. B (CTCA Claim).  Plaintiff's CTCA claim references Chief Fong's Stay Away Order, the denial of LWLP between December 28, 2009 through June 27, 2011, and states that he and officers who testified on his behalf at a July 18, 2011 internal meeting regarding LWLP were "investigated for time card abuse or time off" by the SFPD in retaliation for testifying about the denial of LWLP. *See* CTCA Claim at 3.

On February 14, 2012, Defendant sent a Notice of Action Upon Claim letter informing Plaintiff's counsel that his client's CTCA claim was denied.  Gschwind Decl., Ex. C.  Plaintiff's counsel denies receiving the Notice.  Robinson Decl. ¶ 3.

Plaintiff filed a First Amended Complaint ("FAC") on December 20, 2012 asserting claims under 42 U.S.C. § 1983 and California Government Code § 3300, et seq.; the FAC was served on the City on March 13, 2013.  Def. Fact No. 4, as clarified by Boreen Decl., Ex. A, Dkt. No. 101-6; Gschwind Decl., Ex. D (FAC).  Plaintiff filed his SAC on May 6, 2015.  Dkt. No. 59.  The SAC alleges only three claims: (1) a violation of California Labor Code § 1102.5(b) (Whistleblower Retaliation for Reporting Violation of Regulation); (2) a violation of California Labor Code §

---

[8]  To the extent Plaintiff offers his complaint with the Labor Commissioner to prove an investigation actually took place and was motivated by retaliatory intent, the document is inadmissible hearsay.  Plaintiff does not introduce any evidence regarding this investigation.  Similarly, both Plaintiff's allegation in his CTCA claim that he and three officers who testified on his behalf were investigated "for time card abuse or time off" after a July 18, 2011 hearing (Gschwind Decl., Ex. B at 3) and his response to Defendant's interrogatories in which he references an investigation (*id.*, Ex. CC at 4 (Pl.'s Resp. to Special Rog. 14)) are inadmissible hearsay to the extent Plaintiff would offer the documents to prove that an investigation took place.  John Fewer declares that the SFPD's human resources department investigated him and other officers who testified at a June 2011 hearing, that HR made a formal complaint, and that the investigation was retaliatory (Fewer Decl. at 5), but Fewer does not lay any foundation for these statements.  Plaintiff does not offer any evidence that he, Fewer, or anyone else was investigated in connection with a June 2011 meeting.

1    3300 et seq. (Police Safety Officers' Procedural Bill of Rights ("POBRA")); and (3) a First

2    Amendment violation pursuant to 42 U.S.C. § 1983 ("Section 1983") (Retaliation for Protected

3    Reporting of Illegal Practices).

4           There is no evidence in the record before the Court that Plaintiff spoke to anyone outside

5    his chain of command about the SFPD's alleged violations of State or Federal laws.[9]

6                                              **DISCUSSION**

7           The Court first addresses Plaintiff's state law claims and then his Section 1983 claim.

8    Ultimately, the Court finds Plaintiff has not identified evidence that creates a genuine question of

9    material fact for trial on any of his claims.

10   **A.      State Law Retaliation Claims**

11          Defendant moves for summary judgment as to Plaintiff's California claims on the ground

12   they are untimely under the California Tort Claims Act, Cal. Gov't Code §§ 810, et seq.  *See* Mot.

13   at 12-13.  The CTCA generally applies to "all claims for money or damages against local public

14   entities." Cal. Gov't Code § 905.  There is no question that the requirements of the CTCA apply

15   to both of Plaintiff's state law claims.  *See Dowell v. Contra Costa Cty.*, 928 F. Supp. 2d 1137,

16   1151 (N.D. Cal. 2013) (CTCA applies to California Labor Code whistleblower statute claims);

17   *Ibarra v. Watsonville*, 2013 WL 623045, at *8 (N.D. Cal. Feb. 15, 2013) (CTCA applies to

18   California POBRA claims for damages).

19          Under the CTCA, any claim against a public entity must be presented to that public entity

20   within six months of the accrual of the cause of action or it is time barred.  Cal. Gov't Code §

21   911.2(a); *see also City of Stockton v. Super. Ct.*, 42 Cal. 4th 730, 737-38 (2007) ("[F]ailure to

22   timely present a claim for money or damages to a public entity bars a plaintiff from filing a lawsuit

23   against that entity."); *Comm. for Immigrant Rights of Sonoma Cty. v. Cty. of Sonoma*, 644 F. Supp.

24   2d 1177, 1205-06 (N.D. Cal. 2009) (plaintiff must present CTCA claim within six months of

25   ───────────────
[9] The SAC includes allegations that Plaintiff reported Defendant's "illegal practices," including

26   violation of the Americans with Disabilities Act as well as other Federal and State laws, to the
     California District Attorneys' Association, Morgan Gorrono, the Mayor's Office of Disability, the

27   Board of Supervisors, the San Francisco Department of Public Works, and "all of his supervisors"
     at the Traffic Company.  SAC ¶¶ 9, 21-22.  Plaintiff also argues in his Opposition that he spoke

28   about unlawful conduct by Defendant to various organizations.  Opp'n at 12, 20-23.  Plaintiff,
     however, fails to support these allegations with any citations to evidence in the record.

United States District Court
Northern District of California

accrual; any claim predicated on conduct occurring prior to that six month period is time barred). The date of accrual for presenting a government tort claim is determined by the rules applicable to determining when any ordinary cause of action accrues.  Cal. Gov't Code § 901.  "As a general rule, under California law the default accrual rule is the 'last element rule,' where a claim accrues 'when [it] is complete with all of its elements'—those elements being wrongdoing, harm, and causation."  *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 880 (N.D. Cal. 2015) (quoting *Pooshs v. Philip Morris USA, Inc.*, 51 Cal. 4th 788, 797 (2011)).  Plaintiff's state law retaliation claims accrued when his employer took punitive action against him for engaging in protected activity.[10]

Because Defendant bears the burden of proof to establish this affirmative defense at trial, it must "come forward with evidence which would entitle him to a directed verdict if the evidence went uncontroverted at trial. . . .  [it] must establish the absence of a genuine issue of fact on each issue material to [its] affirmative defense."  *Givens v. City & Cty. of S.F.*, 2012 WL 929661, at *5 (N.D. Cal. Mar. 19, 2012) (citing *Houghton v. Smith*, 956 F.2d 1532, 1536-37 (9th Cir. 1992)).  As noted above, Defendant has shown that Plaintiff first presented his CTCA claim related to this matter on December 23, 2011.  To be timely, the claim had to relate to conduct that occurred within the prior six months.  *See* Cal. Gov't Code § 911.2(a).  Defendant also met its burden of showing that Plaintiff cannot produce admissible evidence to support the existence of any retaliatory conduct after May 2010.  Plaintiff has not established a genuine dispute exists on this issue.  In his Opposition, Plaintiff refers only to retaliatory actions by the SFPD occurred before May 2010.  Specifically, Plaintiff was denied LWLP in January 2010, and Defendant rejected his grievance regarding that denial at Step II in May 2010.  While Plaintiff generally alludes to other retaliatory actions, he fails to identify them with specificity.  The Court thus allowed Plaintiff

---

[10] To state a claim for whistleblower retaliation under California Labor Code section 1102.5, Plaintiff must show (1) he engaged in protected activity; (2) his employer subjected him to and adverse employment action; and (3) there is a causal link between the adverse action and the protected activity.  *Patten v. Grant Joint Union High Sch. Dist.*, 134 Cal. App. 4th 1378, 1384 (2005).  To state a claim for violation of POBRA, Plaintiff must show his employer took punitive action, denied him a promotion, or threatened him with such action, because of the lawful exercise of rights granted by POBRA, or the exercise of any rights under any existing administrative grievance procedure.  Cal. Gov't Code § 3304(a).  "Punitive action" is defined as "any action that may lead to dismissal, demotion, suspension, reduction in salary, written reprimand, or transfer for purposes of punishment."  Cal. Gov't Code § 3303.  Thus, the last element of Plaintiff's state law claims are retaliatory acts by his employer.

1    another opportunity to identify in the record any evidence that Defendant took retaliatory action

2    against him after May 2010.  *See* Suppl. Briefing Order at 5.  In response, Plaintiff identified only

3    Morgan Gorrono's "conclusion that SFPD Command Staff seemed to be engaging in an ongoing

4    campaign of harassment against him . . . and that they seemed bent on depriving him of his rights

5    as an employee."  *See* Pl.'s Suppl. Stmt. (citing Gorrono Decl. ¶ 23).  As explained above, this

6    vague, conclusory statement lacks foundation and is not admissible; it does not create a genuine

7    dispute of fact whether Defendant retaliated against Plaintiff after May 2010.  *See supra* at note 7.

8    He also cites John Fewer's Declaration about an investigation that allegedly took place in July

9    2011, but Fewer provides no specifics about this investigation or any foundational support for the

10   Court to confirm this investigation actually took place.  *See supra* at note 8.  Based on the

11   undisputed facts, Plaintiff presented his CTCA claim more than six months after the retaliatory

12   conduct on which his state law retaliation claims could be based occurred, and thus more than six

13   months after his claims accrued.  It is thus undisputed that Plaintiff filed his CTCA claim after the

14   deadline for doing so expired.

15        Plaintiff also argues his state law claims are timely because Defendant did not send him a

16   notice that his CTCA claim was denied pursuant to California Government Code section 945.6(a),

17   and he thus had two years to file from the date of injury.  *See* Opp'n at 9-10.  Under section

18   945.6(a), a claimant must file suit either (1) within six months of the date the Notice of Action

19   Upon Claim was mailed by the entity denying the claim, or (2) within two years of accrual of the

20   action.  It is undisputed Defendant sent a "Notice of Action Upon Claim" letter informing

21   Plaintiff's counsel on February 14, 2012 that his client's claim was denied.  As the notes to the

22   1970 Amendment of California Government Code section 945.4 explain, "[t]he triggering date

23   generally will be the date the notice is deposited in the mail or personally delivered to the

24   claimant."  The statute does not require the claimant to receive the notice, only that the notice be

25   served in accordance with the requirements of California Code of Civil Procedure section 1013a.

26   *See Him v. City & Cty. of S.F.*, 133 Cal. App. 4th 437, 445 (2005) ("[A] claimant is required to

27   comply with the six-month statute of limitations associated with government tort claims upon

28   proof that the notice of rejection was served even if it was not actually received by the claimant.");

United States District Court
Northern District of California

14

1    Cal. Civ. Proc. Code § 1013a(1) (proof of service by mail may be made by affidavit stating: exact

2    title of document served; name and address of person making the service showing person resides

3    or is employed in county where mailing occurs, is over 18 and not a party; and showing date and

4    place of deposit in mail, name and address of person being served; and showing envelope was

5    sealed and deposited in the mail with prepaid postage).  Defendant's Proof of Service meets the

6    requirements of section 1013a.  Accordingly, Plaintiff had six months after February 14, 2012 to

7    file an action and thus had to do so before August 14, 2012.  Because he did not file the FAC until

8    December 20, 2012, his claims are time-barred under section 945.6(a).  Plaintiff's claims are also

9    barred under section 945.6(b).  Plaintiff's state law claims accrued at the latest on May 19, 2010,

10   but the first filing by which Plaintiff could allege compliance (substantial or otherwise) with the

11   CTCA was his FAC, which he filed on December 20, 2012—more than two years after the claims

12   had accrued.  Thus his state law claims are time-barred on this ground as well.

13           Unable to create a genuine issue of fact, Plaintiff offers several legal arguments in an

14   attempt to evade the impact of his failure to comply with CTCA requirements.  None of these

15   arguments is persuasive.  First, Plaintiff argues his claims are timely under the continuing

16   violations doctrine.  The continuing violations doctrine allows plaintiffs "to seek relief for events

17   outside of the limitations period if a series of violations are related closely enough to constitute a

18   continuing violation, and if one or more of the violations falls within the limitations period."

19   *Parsons v. Alameda Cty. Sheriff Dep't*, 2016 WL 1258590, at *7 (N.D. Cal. Mar. 31, 2016) (citing

20   *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001)).  Assuming arguendo that Plaintiff has

21   established the existence of a series of closely-related violations, his retaliation claims accrued

22   when the "alleged adverse employment action acquire[d] some degree of permanence or finality."

23   *Yanowitz v. L'Oreal USA, Inc*., 36 Cal. 4th 1028, 1059 (2005) (citation omitted).  The last alleged

24   adverse employment Plaintiff identified, the denial of LWLP, had "acquire[d] some degree of

25   permanence or finality" by May 2010.  Under the CTCA, Plaintiff had six months to present a

26   CTCA claim to Defendant, or until November 2010.  He did not do so until December 2011.  To

27   the extent Plaintiff contends the continued denial of LWLP until he entered DROP in June 2011

28   constitutes discrete acts, he is mistaken.  *See Knox*, 260 F.3d at 1013 ("a mere continuing impact

United States District Court
Northern District of California

15

1   from past violations is not actionable." (citations, internal quotation marks, and emphasis

2   omitted)).  The continuing violation doctrine is inapplicable in the instant action because Plaintiff

3   has not established any new violations or misconduct by Defendant since May 2010.  *See id.*

4          Second, Plaintiff offers no legal support for his argument that filing a complaint with the

5   California Labor Commission regarding an investigation initiated by the Command Staff

6   following the July 18, 2011 hearing (Opp'n at 9; Robinson Decl., Exs. 1 & 3) replaces or excuses

7   his obligation to present a claim in compliance with the CTCA.  It does not.  *See supra* at 12-13

8   (citing *Dowell*, 928 F. Supp. 2d at 1151; *Ibarra*, 2013 WL 623045, at *8).

9          Third, Plaintiff cannot "relate" the claims in the FAC or SAC to those in his original state

10   court complaint in order to bring them within the accrual period.  *See* Opp'n at 10-12; Pl.'s Suppl.

11   Br. at 3-4.[11]  The original complaint was not viable because it was filed before Plaintiff presented

12   a CTCA claim to the City.  In general, "no suit for money or damages may be brought against a

13   public entity on a cause of action for which a claim is required to be presented . . . until a

14   written claim therefor has been presented to the public entity and has been acted upon by the

15   board, or has been deemed to have been rejected by the board[.]"  Cal. Gov't Code § 945.4.  It is

16   undisputed that Plaintiff's original complaint, which he filed in state court on June 28, 2011 (but

17   did not provide to the City until December 23, 2011), was void because Plaintiff had not presented

18   a CTCA claim to the City.  "Compliance with the CTCA is an element of the cause of action, [ ]

19   and is therefore required[.] . . . '[F]ailure to file a claim is fatal to a cause of action[.]'"  *Arceneaux*

20   *v. Marin Hous. Auth.*, 2015 WL 1263891, at *4 (N.D. Cal. Mar. 19, 2015) (internal citations

21   omitted); *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 708 (1989) (submission of claim under

22   CTCA "is a condition precedent to a tort action and the failure to present the claim bars the action"

23   (internal quotation marks and citations omitted)).  The state law claims asserted in the FAC or

24   SAC cannot "relate back" to the filing of the original complaint, because the state law claims in

25   the original complaint were fatally deficient.[12]  *See Wilson v. People By & Through Dep't of Pub.*

26   ─────────────────────
   [11] The Court gave Plaintiff a second opportunity to address the "relation back" and California
27   Government Code section 945.6 arguments.  *See* Suppl. Briefing Order.

28   [12] Plaintiff attached a copy of the original complaint to his CTCA submission on December 23,
    2011.  Robinson Decl. ¶ 2.  He did not serve the original complaint on Defendant within 60 days

United States District Court
Northern District of California

1    *Works*, 271 Cal. App. 2d 665, 669 (1969) ("A subsequent pleading which sets out the subsequent

2    performance of a statutory condition precedent to suit cannot relate the time of performance of the

3    condition back to the time of the filing of the original complaint and thereby toll the running of the

4    period of limitation, since the rule of relation back does not operate to assign the performance of a

5    condition precedent to a date prior to its actual occurrence.").

6        The cases Plaintiff cites to support his relation-back argument are distinguishable.  First, in

7    *Bahten v. County of Merced*, 59 Cal. App. 3d 101, 115 (1976), the plaintiff had contacted the

8    defendants and sought leave to file a late tort claim before filing his complaint.  When the

9    defendants denied plaintiff leave to do so, a court specifically granted plaintiff relief from the

10   claim presentation requirement, and plaintiff filed an amended complaint, which the court related

11   back to the original complaint.  *Id.* at 116.  Similarly, while the plaintiffs in *Cooper v. Jevne*, 56

12   Cal. App. 3d 860, 870-71 (1976), had not pleaded compliance with the claim presentation statutes,

13   extrinsic material before the court included a copy of the claim and a minute order from the county

14   rejecting the claim.  In their proposed amended complaint, the plaintiffs alleged the filing of a tort

15   claim, its rejection, and the fact the action was thereafter timely filed.  *Id.*  The court of appeals

16   found "at the very least that there is a reasonable possibility" the plaintiffs could amend their

17   complaint to allege compliance with the presentation requirements.  *Id.*  Here, Plaintiff does not

18   allege, much less present evidence, that he timely filed a tort claim or sought leave to file a late

19   claim under California Government Code section 946.6.  Unlike the plaintiffs in *Bahten* and

20   *Cooper*, Plaintiff cannot allege he substantially complied with the claim presentation requirement;

21   this is fatal to his argument.  *See State v. Super. Ct. (Bodde)*, 32 Cal. 4th 1234, 1240-44 (2004)

22   (reaffirming "fundamental nature of the claim presentation requirement" as a "condition precedent

23   to a tort action" and distinguishing *Bahten* and other cases: "In those cases where the plaintiffs

24   submitted a timely claim but prematurely filed a complaint, the courts refused the dismiss the

25   action because the plaintiffs had substantially complied with the claim presentation requirement . .

26   . . Likewise, in those cases where the plaintiffs prematurely filed a complaint against a public

27

28   of filing it as required by California Rule of Court 3.110(b).  Plaintiff then filed a FAC on
     December 20, 2012 and served it on Defendant on March 13, 2012.

1    entity before obtaining leave to present a late claim but failed to timely amend the complaint after

2    obtaining leave, the courts refused to dismiss the action because the plaintiffs had substantially

3    complied with the claim presentation requirement.").  Instead of seeking leave to file a late claim

4    under section 946.6 to address otherwise time-barred conduct, Plaintiff simply filed a state court

5    complaint in June 2011 and an untimely CTCA claim in December 2011.

6         Finally, the January 2014 amendment to the California Labor Code that clarified when an

7    individual did not need to exhaust administrative remedies or procedures in order to bring a civil

8    action (*see* Opp'n at 8, *citing* Cal. Lab. Code § 244 (2014)) pertains to the internal grievance

9    procedures of an employer (e.g., the grievance procedure set out in an MOU or company manual)

10   and/or external administrative procedures (e.g., filing a complaint about that employer with the

11   Department of Labor).  *See, e.g.*, *Reynolds v. City & Cty. of S.F.*, 576 F. App'x 698, 700-01 (9th

12   Cir. 2014) (holding that plaintiffs filing suit under Cal. Lab. Code § 1102.5 no longer had to

13   exhaust administrative remedies by filing claim with Labor Commissioner under Cal. Lab. Code §

14   98.7); *Layton v. Terremark N. Am., LLC*, 2014 WL 2538679, at *3 (N.D. Cal. June 5, 2014)

15   (explaining that district courts have interpreted Cal. Lab. Code § 244 to mean that "a plaintiff

16   filing suit for violations of the Labor Code need not exhaust administrative remedies by filing a

17   complaint with the California Labor Commissioner before filing a complaint in federal court.");

18   *see also* Dkt. No. 66 (June 16, 2015 Order) at *5-8 (holding Cal. Lab. Code §§ 98.7(g) and 244(a)

19   apply retroactively and that Plaintiff did not need to exhaust administrative remedies before Labor

20   Commissioner prior to filing suit).  But the claims presentation requirement of the CTCA is not an

21   administrative remedy.  *See Richards v. Dep't of Alcoholic Beverages Control*, 139 Cal. App. 4th

22   304, 315 (2006) (distinguishing between exhaustion of administrative remedies and presenting

23   claim under CTCA: "The presentation of a claim pursuant to the Tort Claims Act is a separate,

24   additional prerequisite to commencing an action against the state or a local public entity and is not

25   a substitute for the exhaustion of an administrative remedy").  Section 244 does not excuse

26   Plaintiff from complying with the claims presentation requirement of the CTCA.

27        In light of the foregoing, the Court finds Plaintiff's retaliation claims accrued at the latest

28   on May 19, 2010.  Pursuant to section 911.2(a), Plaintiff was required to present his claim based

United States District Court
Northern District of California

18

on the denial of LWLP to the City no later than six months after that date, or no later than

November 19, 2010.  Plaintiff waited for more than a year before doing so: he did not present a

CTCA claim until December 23, 2011.  Accordingly, Plaintiff's state-law claims are barred by

section 911.2(a), and the Court grants Defendant summary judgment as to Plaintiff's California

state law claims.

**B.      Section 1983 Retaliation Claim**

To prevail on his Section 1983 claim, Plaintiff must show: (1) the deprivation of any

rights, privileges, or immunities secured by the Constitution; (2) by a person acting under the color

of state law.  42 U.S.C. § 1983.  Plaintiff alleges he was deprived of his First Amendment right to

free speech by Defendant.  *See* SAC, Third Claim for Relief.

As a public employee, Plaintiff's right to free speech may be regulated to some degree by

his employer.  *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).  But "the state may not

abuse its position as employer to stifle 'the First Amendment rights [its employees] would

otherwise enjoy as citizens to comment on matters of public interest.'"  *Eng v. Cooley*, 552 F.3d

1062, 1070 (9th Cir. 2009) (quoting *Pickering*, 391 U.S. at 568).  In order to balance the interest

of employees as citizens in commenting upon matters of public concern, and of the State as an

employer in promoting the efficiency of the public services it provides through its employees

(*Pickering*, 391 U.S. at 568), courts evaluating a First Amendment retaliation claim examine five

factors:

> (1) whether the plaintiff spoke on a matter of public concern; (2)
> whether the plaintiff spoke as a private citizen or public employee;
> (3) whether the plaintiff's protected speech was a substantial or
> motivating factor in the adverse employment action; (4) whether the
> state had an adequate justification for treating the employee
> differently from other members of the general public; and (5)
> whether the state would have taken the adverse employment action
> even absent the protected speech.

*Dahlia v. Rodriguez*, 735 F.3d 1060, 1067 (9th Cir. 2013) (en banc) (quoting *Eng*, 552 F.3d at

1070).  "[A]ll the factors are necessary, in the sense that failure to meet any one of them is fatal to

the plaintiff's case."  *Id*. at 1067 n.4.

A public employee's speech involves a matter of "public concern" when it involves "issues

about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (citation omitted).  Whether a public employee's speech or expressive conduct involves a matter of public concern depends upon the "content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).  A public employee's speech deals with a matter of public concern when it "can be fairly considered as relating to a matter of political, social, or other concern to the community[.]" *Voigt v. Savell*, 70 F.3d 1552, 1559 (9th Cir. 1995).  But a public employee's speech generally is not protected when it is made "pursuant to [his] official duties." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).  There is no bright line rule to determine whether speech is made pursuant to a public employee's official duties, but courts can follow three guidelines: (1) whether the speech is made within the plaintiff's chain of command (if an employee takes his job concerns to persons outside the work place, then those communications are ordinarily made not as an employee, but as a citizen); (2) whether the speech reflects broad concerns about corruption or systemic abuse outside professional duties (in which case it is more likely private speech); or (3) whether the speech was made in direct contravention to a supervisor's orders (in which case it is more likely private speech).  *Dahlia*, 735 F.3d at 1074-75.

Defendant argues Plaintiff's Section 1983 claim fails because Plaintiff has not identified any protected speech for which he suffered retaliation or established he made the speech in his capacity as a private citizen.  *See* Mot. at 20-21; Reply at 8.  Defendant showed that Plaintiff cannot produce admissible evidence to support these elements of his claim.  *See* Mot. at 21-22 (no evidence adduced in discovery that Plaintiff engaged in protected speech); *see also* Def. Facts.  In his Opposition, Plaintiff failed to identify with specificity evidence in the record to support the argument he engaged in protected speech as a private citizen.  *See* Opp'n at 18.  Plaintiff instead makes conclusory statements, and generally refers to his declaration (which the Court has stricken) and the declarations of Corrales and Gorrano as evidence of Plaintiff's concern about public safety.  *Id.* at 20.  Plaintiff also argues he was "investigated on possible disciplinary charges for speaking about SPOT enforcement to the District Attorney's association" six months after

receiving Chief Fong's Stay Away Order. *Id.* at 22.

The Court again allowed Plaintiff another opportunity to provide evidence for this claim, including: (1) when and how Plaintiff engaged in protected speech, and (2) why Plaintiff acted as a private citizen and not in his capacity as a public employee when he engaged in protected speech. *See* Suppl. Briefing Order. In response, Plaintiff identified only the following portions of the record (*see* Pl.'s Suppl. Stmt. at 2):

    o  "After they removed Tobin from the program, I remember that Tobin continued to be an advocate for work zone safety issues and the public right of way. While the SFPD was dismantling the SPOT program, Tobin focused his education efforts elsewhere. He spoke to various government and non-governmental organizations all over California and beyond." Fewer Decl. at 3:17-20.

    o  "In October of 2009, Pat received a glowing letter of commendation from the District Attorney regarding a presentation he gave in Anaheim on work zone fatalities. The letter said what a great job he did, how professional he was, how informative he was, etc. When the Brass received it, instead of accepting it for what it was, suddenly they wanted to investigate whether Inspector Tobin was on his own time or on the City's time, whether he had paid his own expenses, if he had filled out a secondary employment request, and if he might have represented himself as a representative of the Police Department without authorization. It was ridiculous." Corrales Decl. at 4:8-15.

    o  Gorrono describes how Plaintiff explained the SPOT program to San Francisco City Officials at a September 10, 2009 meeting. Plaintiff "gave a ten minute presentation on how the SFMTA SPOT enforcement officers located, memorialized, and mitigated the right-of-way hazards affecting many vulnerable individuals on the streets and sidewalks of the CCSF. Sergeant Tobin made it clear that the SPOT Program is, in many ways, the vehicle CCSF is using to perform the functions mandated" by the ADA. The Director of the Mayor's Office on Disability opposed police involvement in violations of the public's right of way and argued police officers should work on other matters. Gorrono Decl. at 6:4-27.

    o  Fewer testified that, after being removed as Director of the SPOT Program, Plaintiff continued to attend seminar throughout the United States to discuss traffic safety. First Fewer Dep. at 83:4-20.

The Court finds Plaintiff has failed to establish a genuine issue of material fact exists as to whether he spoke as a private citizen. *See Dahlia*, 735 F.3d at 1067, 1074-75. First, none of the speech Plaintiff has identified concerns public corruption or abuse. There is no evidence Plaintiff spoke about the SFPD's dismantling of the SPOT program, complained about the SFPD's

United States District Court
Northern District of California

violations of State and Federal laws, or criticized the SFPD for failing to promote or ensure traffic

safety; at most, the evidence Plaintiff cites establishes he spoke generally about the importance of

traffic safety and about the SPOT program specifically.  Second, while Plaintiff has established he

was ordered not to *enforce* traffic safety violations (most notably by Chief Fong in the May 2009

Stay Away Order), he has cited no evidence establishing he was ordered not to *speak* about traffic

safety or the SPOT program, or was ordered not to attend any of the conferences or events he

attended.  On the contrary, he was invited to the September 10, 2009 meeting for the very purpose

of describing the SPOT program to City Officials.  Plaintiff thus does not create a genuine issue

that any of his speeches or presentations about traffic safety generally were made in direct

contravention of a superior's order.  Third, while Plaintiff spoke to persons outside of his chain of

command (e.g., the District Attorney Association in Anaheim, or non-governmental organizations

throughout the country) about the importance of public safety, there is no evidence he did so as

anything other than an officer sharing his experience and expertise in traffic safety with others

interested in that topic—in other words, there is no evidence he was acting outside the scope of his

ordinary job duties as a police officer educating others about safety issues.  More specifically,

there is no evidence Plaintiff spoke to anyone outside his chain of command about the SFPD's

alleged violations of State or Federal laws.[13]  Because Plaintiff has failed to establish a genuine

issue of material fact whether he engaged in protected speech as a private citizen, he has not

established he spoke outside of his duties, and his First Amendment retaliation claim fails.  *See*

*Dahlia*, 75 F.3d at 1067 n.4.  Consequently, the Court finds Defendant has met its burden of

establishing no genuine issue of material fact exists regarding Plaintiff's Section 1983 retaliation

---

[13] As there is no evidence in the record allowing the Court to find Plaintiff reported or threatened to report "illegal practices" by Defendant, *Stilwell v. City of Williams*, is inapposite.  *See id.*, No. 14-15540, ___ F.3d___, 2016 WL 4151221, at *2 (9th Cir. Aug. 5, 2016) (*see* Pl.'s Jud. Op.) (*Stilwell* plaintiff alleged he was fired for signing a sworn statement and planning to testify against his employer in an age-discrimination lawsuit filed by a former co-worker; Ninth Circuit held plaintiff's sworn statement and testimony were "outside the scope of his ordinary job duties" and about a matter of public concern).  *Daniels v. Merit Systems Protection Board*, No. 13-73913, ___ F.3d ___, 2016 WL 4191522 (9th Cir. Aug. 9, 2016) (Def.'s Jud. Op.) is also inapposite.  *Daniels* pertains to the Whistleblower Protection Enhancement Act of 2012, which protects "any disclosure of certain types of wrongdoing in order to encourage such disclosures."  *Id.* at *2 (internal quotation marks and citations omitted).  Plaintiff here has not identified any public speech pertaining to disclosures of wrongdoing.

claim and grants summary judgment to Defendant on that claim.

## CONCLUSION

Based on the analysis above, the Court **GRANTS** Defendant's Motion for Summary Judgment.  As there are no other claims remaining in this matter, the Court will issue a separate judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

Dated: October 4, 2016

_____

MARIA-ELENA JAMES
United States Magistrate Judge

United States District Court
Northern District of California

23